UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:18-cv-11839-IT

LUTHER A. BUMPS,

     Plaintiff,

     v.

SUZANNE TRASAVAGE, DAVID F. PERRY,
CARRIE DEANGELO, and THE TOWN OF
TRURO,

     Defendants

## DEFENDANTS SUZANNE TRASAVAGE, DAVID F. PERRY, CARRIE DEANGELO AND THE TOWN OF TRURO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

The individual officers are protected by qualified immunity.  Animal Control Officer Suzanne Trasavage, Detective Sergeant David F. Perry and Sergeant Carrie DeAngelo did not violate the Plaintiff's clearly established constitutional rights under § 1983 by seizing the Plaintiff's horse without a warrant.  The seizure was appropriate because the horse's conditions --- dirty food, dirty water, no adequate shelter, cracked hooves, and significant buildup of feces -- created exigent circumstances and were in plain view.  For his part, The Plaintiff cannot satisfy his burden to identify a case of controlling authority with similar facts that would put all reasonable officers standing in Trasavage, Perry and DeAngelo's shoes on notice that their actions in this case would violate the constitution.  Indeed, there are no such cases.

After the seizure, the Plaintiff had adequate post-deprivation remedies under the Fourteenth Amendment, and there is no evidence that Trasavage, Perry or DeAngelo played any role or had any responsibility for providing the Plaintiff with a hearing.

The Plaintiff's malicious prosecution claim fails because the undisputed facts establish that there was probable cause to charge him with animal cruelty under M.G.L. c. 272 § 77 (crime for person to unnecessarily fail to provide animal with proper food, drink, shelter, sanitary environment, or protection form the weather).

For these reasons and others as addressed below, summary judgment should enter for the Defendants on all of the counts in the Plaintiff's Complaint: (1) Count I – 42 U.S.C. § 1983 (violation of Fourth and Fourteenth Amendments); (2) Count II – Violations of the Massachusetts Civil Rights Act; (3) Count III – Malicious Prosecution; (4) Count VI [sic] – Negligence (against Trasavage, Perry and DeAngelo); and (5) Count IX [sic] – Massachusetts Tort Claims Act (against Town of Truro).

## II.     UNDISPUTED FACTS

In sum, on September 2, 2015, employees for the Town of Truro seized the Plaintiff's pet horse due to its improper and inadequate living conditions, including: inadequate and dirty food (Exhibit 4, p. 8), dirty water (Exhibit 4, pp. 1-4), difficult access to water, including during a well above 80 degree day (Exhibit 3, p. 3; Exhibit 4, p. 3; Exhibit 5), inadequate shelter (Exhibits 4, pp. 5-6; Exhibit 6), inadequate fencing (Exhibit 2, p. 2; Exhibit 3, p. 2; Exhibit 4, pp. 7, 12, 16; Exhibit 8), and unsanitary buildup of feces in the paddock (Exhibit 4, pp. 5, 7, 11, 12, 17, 18, 19, 22; Exhibit 8).  The horse's hooves needed care as they were cracked and chipped.  Exhibit 2, p. 2; Exhibit 4, pp. 11, 14, 24,

25; Exhibit 1, p. 174.  Critically, the officers also found severely neglected and suffering Angora rabbits on the same property.  Exhibits 2, 3, 9.

Due to the horse's living conditions, on October 7, 2016, Det. Sgt. Perry submitted an application for criminal complaint for the Plaintiff to be charged with one count of animal cruelty under M.G.L. c. 272 § 77 (person who unnecessarily fails to provide animal with proper food, drink, shelter, sanitary environment, or protection for the weather). Exhibit 11.  Based on the statement submitted (Exhibit 3), the clerk-magistrate found probable cause for a complaint to issue.  Exhibit 11.  The Court later reaffirmed the probable cause finding.  Exhibit 16.

Thereafter, the Plaintiff cleaned up the debris, obtained a building permit, completed construction of a roofed shelter, removed the manure, and mended the fence. Exhibit 18, p. 2.  On January 11, 2016, the Truro Health Department notified the Plaintiff that its Order to Correct had been resolved.  Exhibit 14.

Through the criminal court process the Plaintiff regained possession of the horse. Initially, on February 24, 2016, the Cape & Islands District Attorney's Office refused to permit the horse to be returned to the Plaintiff, on the grounds that the criminal complaint had not yet been resolved.  Exhibit 18, pp. 2-3.  On March 17, 2016, the Plaintiff filed a motion, and thereafter the Plaintiff regained possession of his horse.  Exhibit 18, p. 1.

In further support of their motion, the Defendants incorporate their Local Rule 56.1 Statement of Undisputed Material Facts (in the light most favorable to the Plaintiff), with attached Exhibits 1-18.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in this case because there is no genuine issue for

trial. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986), quoting Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. However, the Court need not credit "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." Gray v. Cummings, 917 F.3d 1, 5 (1st Cir. 2019). The burden on the moving party may be discharged by showing the District Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 325. Applying this legal standard to the undisputed facts demonstrates that summary judgment should enter for the Defendants.

## IV.    QUALIFIED IMMUNITY STANDARD

Qualified immunity is a doctrine that protects police officers from civil damages liability for actions taken under color of state law. Gray, 917 F.3d at 9–10. This protection attaches "to all but the plainly incompetent or those who knowingly violate the law." Id., citing Malley v. Briggs, 475 U.S. 335, 341 (1986). Thus, a government official may invoke the defense of qualified immunity when his or her actions, though causing injury, did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.

The qualified immunity analysis has two facets. The Court must determine (1) whether the defendant officer violated the plaintiff's constitutional rights, and (2) whether the allegedly abridged right was "clearly established" at the time of the defendant officer's

claimed misconduct.  <u>Gray</u>, 917 F.3d at 9–10.  This question also has two facets: First, the Plaintiff must identify either controlling authority or a consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm.  <u>Id</u>.  Second, the Plaintiff must demonstrate that an objectively reasonable officer in the Defendant's position would have known that his or her conduct violated that rule of law.  <u>Id</u>.  This latter step is designed to achieve a prophylactic purpose: it affords "some breathing room for a police officer even if he has made a mistake (albeit a reasonable one) about the lawfulness of his conduct."  <u>Id</u>.

The qualified immunity analysis must include a consideration of the particularized facts of the case, not broad general propositions.  <u>Hunt v. Massi</u>, 773 F.3d 361, 368 (1st Cir. 2014).  To be clearly established, the contours of this right must have been "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  <u>Plumhoff v. Rickard</u>, 134 S.Ct. 2012, 2023 (2014).  In other words, existing precedent must have placed the constitutional question "beyond debate."  <u>Ashcroft v. al- Kidd</u>, 131 S.Ct. 2074, 2083 (2011).

To defeat a police officer's qualified immunity defense, a plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment."  <u>Gray</u>, 917 F.3d at 10, quoting <u>City of Escondido v. Emmons</u>, 139 S.Ct. 500, 504 (2019) (per curiam).   Although such a case need not arise on identical facts, it must be sufficiently analogous to make crystal clear to an objectively reasonable officer the unlawfulness of his or her actions.  <u>Id</u>.

In the present case, for ACO Trasavage, Det. Sgt. Perry and Sgt. DeAngelo to be protected by qualified immunity, probable cause need only be "at least arguable." <u>Hilchey</u>

v. City of Haverhill, 537 F. Supp. 2d 255, 260-262 (D. Mass. 2008) (test for qualified

immunity is forgiving); Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004) (qualified immunity

"requires a somewhat lesser showing" than probable cause.).[1]

## V.     ARGUMENT

### A.  Count I - 42 U.S.C. § 1983 - Fourth Amendment Claim Fails Due To Exigent Circumstances

The officers are protected by qualified immunity because there were exigent

circumstances to seize the horse due to its living conditions.  An exception to the Fourth

Amendment's warrant requirement is for exigent circumstances.  United States v.

Almonte-Baez, 857 F.3d 27, 31 (1st Cir. 2017).

Here, the officers observed the horse's living conditions to have: dirty and

inadequate food, dirty water, difficult access to water (during well above 80-degree day),

roofless and uneven shelter, inadequate fencing, and unsanitary buildup of feces in the

paddock area.  The horse's hooves needed care as they were cracked and chipped.

Critically, the officers also found severely neglected and suffering Angora rabbits on the

same property.  Therefore, the officers' warrantless seizure of the horse was justified by

the exigent circumstances.

---

[1] Probable cause exists if the facts and circumstances within the officer's knowledge and of which the officer had reasonably reliable information would suffice to warrant a prudent person in believing that a person has committed a crime.  Burke v. Town of Walpole, 405 F.3d 66, 80 (1st Cir.2005).  In determining whether the officer had probable cause, courts must view the circumstances from the perspective of a reasonable person in the position of the officer.  Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir.2009).  The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable.  Their conclusion that probable cause exists need only to be reasonable.  Id.  And, once probable cause is established there is no constitutional duty to continue to investigate further.  Holder, 585 F.3d at 505 (officer may terminate investigation when facts demonstrate probable cause).  The First Circuit has "disclaimed any unflagging duty on the part of law enforcement officers to investigate fully before making a probable cause determination."  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir.2004).

The First Circuit has not addressed the issue of whether exigent circumstances can justify a warrantless seizure of animals. Therefore, the Plaintiff cannot meet his burden to identify a case of controlling authority with comparable facts that would put all reasonable officers in Trasavage, Perry and DeAngelo's shoes on clear notice that their actions of seizing the horse were objectively unreasonable. Once an officer invokes qualified immunity, the Plaintiff bears the "heavy" burden of demonstrating that the law in the particular context of the Plaintiff's case was clearly established at the time of the alleged violation. Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015). The absence of controlling authority or a consensus of persuasive authority entitles the officers to qualified immunity under the circumstances of this case.

Other jurisdictions have protected officers in similar situations where offices seized animals without a warrant. The Sixth Circuit has held that exigent circumstances can justify the warrantless seizure of animals from an unhealthy environment. United Pet Supply, Inc. v. City of Chattanooga, Tenn., 768 F.3d 464, 490 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 2378 (2015); Siebert v. Severino, 256 F.3d 648, 657 (7th Cir.2001) (suggesting, without deciding, that "[e]xigent circumstances may justify warrantless seizure of animals"); DiCesare v. Stuart, 12 F.3d 973, 977–78 (10th Cir.1993) (same); Mallory v. City of Riverside, 35 F. Supp. 3d 910, 933 (S.D. Ohio 2014) (exigent circumstances where chickens' unhealthy screeching coming from the garage).

In United Pet Supply, the Court upheld the application of qualified immunity to a warrantless search and seizure of animals in light of suspected animal abuse when investigators reasonably believed they were faced with an emergency regarding the health and safety of animals because the store was hot (broken air conditioner), some of the

animals were without food or water, and the animals had feces and urine matted in their fur.  United Pet Supply, 768 F.3d at 487-490.  In its decision, the Court concluded that the warrant exception for exigent circumstances applied to the seizure of the animals from the store because the conditions in the store created an imminent and ongoing danger to the health of the animals.  Id.  at 491.  In granting qualified immunity under the "exigent circumstances" exception, the Court held that "[a] reasonable officer could believe that this constituted neglect under the [city code] and that the conditions justified the warrantless seizure of the animals."  Id.

Other jurisdictions have even held that officers are protected by qualified immunity after entering residences and seizing animals without a warrant.  In granting qualified immunity, the Second Circuit found that it is not clearly established whether police officers may even enter a dwelling to render emergency assistance to animals.  Shapiro v. City of Glen Cove, 236 F. App'x 645, 646–47 (2d Cir. 2007) (unpublished).  In Shapiro, the information available to the officers suggested that the dogs were in urgent need of assistance because on a cold day several dogs had been seen and heard barking inside an uninhabited, dirty, partially renovated house that lacked heat.  The Court determined that the officers were entitled to qualified immunity because "it would not have been clear to a reasonable officer in their position that their conduct was unlawful."  Shapiro, 236 F. App'x at 646–47; King v. Montgomery Cty., Tennessee, No. 3:17-CV-01116, 2019 WL 1640743, at *6 (M.D. Tenn. Apr. 16, 2019) (officers justified in entering residence and seizing dogs because of concern for health and safety of dogs due to presence of feces and urine – law does not require the officer's assessment to be proven correct only that it be reasonable); People v. Rogers, 184 Misc.2d 419, 708 N.Y.S.2d 795 (2000) (holding that a

warrantless search of a closed pet store was justified by the need to rescue animals in need of medical attention).  The Massachusetts Supreme Judicial Court has held that the emergency aid exception to the constitutional warrant requirement extends to police action undertaken to render emergency assistance to animals.  Com. v. Duncan, 467 Mass. 746, 755 (2014) (reasonableness of the search must be determined on a case-by-case basis upon consideration of the totality of the circumstances).

As a result, the officers are protected by qualified immunity because there were exigent circumstances to seize the horse, and the Plaintiff cannot meet his burden to identify a case of controlling authority with comparable facts that would put all reasonable officers in Trasavage, Perry and DeAngelo's shoes on clear notice that their actions of seizing the horse without a warrant were objectively unreasonable.

**B.  Count I - 42 U.S.C. § 1983 - Plaintiff's Fourth Amendment Claim Fails Because The Horse And Its Living Conditions Were In Plain View**

The officers are protected by qualified immunity because the horse and its living conditions were in plain view when they were lawfully on the property.  The plain view doctrine is an exception to the general warrant requirement when police officers seize property.  United States v. Jones, 187 F.3d 210, 219–20 (1st Cir. 1999) (officers may seize property without a warrant if they perceive it while engaged in a lawful activity). There are three elements of the plain view doctrine: (1) the officer must lawfully have reached the position or vantage point from which he or she could view the seized object; (2) there must be probable cause that the seized item may be useful as evidence of a crime; and (3) the officer has a lawful right of access to the object itself.  Id.

Here, the officers' seizure of the Plaintiff's horse satisfied all three elements of the plain view doctrine.  First, the officers lawfully reached the position from which they

viewed the horse and living conditions because the Plaintiff's mother gave the officers permission to look at the rabbits and while doing so they were "greeted" by the horse located in the outdoor paddock / pasture area.  Exhibit 3, pp. 2-3; Exhibits 4, 5, 6, 8.  The Plaintiff had little expectation of privacy under the Fourth Amendment where the officers did not enter the house or curtilage.  See Oliver v. United States, 466 U.S. 170, 178 (1984).  Indeed, the horse was located and viewed in an outdoor area full of horse manure.  Exhibit 3, pp. 2-3; Exhibits 4, 5, 6, 8.  Therefore, the officers lawfully reached the position from which they viewed the horse and its living conditions.

Second, there was probable cause that the Plaintiff's horse may be evidence of the crime of cruelty to animals under M.G.L. c. 272 § 77 (crime for person to unnecessarily fail to provide animal with proper food, drink, shelter, sanitary environment, or protection form the weather).  An officer may seize property when there is probable cause to associate the property with criminal activity.  Payton v. New York, 445 U.S. 573, 587 (1980); United States v. Sanchez, 612 F.3d 1, 5-6 (1st Cir. 2010) (seized motorcycle was evidence of licensing infractions); King, 2019 WL 1640743, at *8-9 (officers justified in seizing dogs because they had probable cause to believe the dogs were associated with a crime).

Third, the officers had a lawful right of access to the horse because the Plaintiff's mother had given the officers permission to access to the property, the horse was not located in a house or curtilage but rather in a pasture, and the officers had exigent circumstances to enter the Plaintiff's property to seize the rabbits.  Exhibit 3, pp. 2-3; Exhibits 4, 5, 6, 8, 9, 10.  Because the seizure of the Plaintiff's horse satisfied all three elements of the plain view doctrine, it did not violate the Fourth Amendment despite the absence of a warrant.  See United States v. Jones, 187 F.3d 210, 219–21 (1st Cir. 1999).

The Fifth Circuit has held that a warrantless seizure of dogs did not run afoul of the Fourth Amendment, because "the plain view doctrine dictates that a warrantless seizure is reasonable if there was probable cause to believe the seized object was evidence of a crime." Alverson v. Harrison Cnty., 643 Fed.Appx. 412, 415 (5th Cir. 2016). While the charges of animal cruelty were eventually dropped in Alverson, the seizure of the dogs was still considered reasonable and was not a violation of the Fourth Amendment. Id. at 413, 415.

As a result, the officers are protected by qualified immunity because the horse and its living conditions were in plain view, and the Plaintiff cannot meet his burden to identify a case of controlling authority with comparable facts that would put all reasonable officers on clear notice that their actions of seizing the horse without a warrant were objectively unreasonable.

### C.  Count I - 42 U.S.C. § 1983 - Fourteenth Amendment Claim – Fails As A Matter Of Law

The Plaintiff's Fourteenth Amendment procedural due process claim fails against both the individual officers and the Town of Truro because the Plaintiff had adequate post-deprivation state law remedies, including his criminal proceeding and the state tort of conversion. The United States Supreme Court and the First Circuit have strong precedents providing that claims cannot be pressed under 42 U.S.C. § 1983 if there are available and adequate post-deprivation state law remedies. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[There is no] violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide suitable post-

deprivation remedies."); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543–44 (1981)[2]; <u>Lowe v.</u>
<u>Scott</u>, 959 F.2d 323, 340 (1st Cir.1992) ("<u>Parrat</u> and <u>Hudson</u> teach that if a state provides
adequate post-deprivation remedies—either by statute or through the common-law tort
remedies available in its courts—no claim of a violation of procedural due process can be
brought under § 1983 against the state officials whose random and unauthorized conduct
occasioned the deprivation.").

Here, the Plaintiff's procedural due process claim fails for a number of reasons.[3]
First, the Plaintiff had an adequate post-deprivation remedy through the criminal court
where he regained possession of the horse. Exhibit 17, p. 2; Exhibit 18, p. 1. <u>King</u>, 2019
WL 1640743, at *13 (post-deprivation due process provided by the process in plaintiff's
criminal case); <u>O'Kelly v. Russell Twp. Bd. of Trustees</u>, 675 F. Supp. 389, 398 (N.D. Ohio
1987) (dismissing civil due process claim when plaintiff was provided all the post-
deprivation he was entitled as part of the criminal process).

Second, common-law remedies are suitable post-deprivation remedies and the
Plaintiff had an adequate post-deprivation remedy under the Massachusetts state tort of
conversion. <u>Davis v. Schifone</u>, 185 F. Supp. 2d 95, 102 (D. Mass. 2002), citing <u>Abington</u>

---

[2] Adequate state remedies satisfy post-deprivation due process. In <u>Parratt</u>, the Supreme Court held that when the deprivation is not the result of some established state policy or procedure, but is unpredictable or random, the requirements of due process are satisfied when there is "some meaningful means by which to assess the propriety of the State's action at some time after the original taking." <u>Parratt</u>, 451 U.S. at 537-44 (plaintiff's post-deprivation remedy was in state court where he could be compensated for the value of his lost property.)

[3] The Plaintiff cannot advance a substantive due process claim. <u>Clark v. Boscher</u>, 514 F.3d 107, 112 (1st Cir. 2008) (for substantive due process a plaintiff has to prove a deprivation occurred through governmental action that "shocks the conscience"); <u>Davis v. Schifone</u>, 185 F. Supp. 2d 95, 101 (D. Mass. 2002) (fundamental interests protected by substantive due process have been found in restrictive areas such as marriage, procreation and family life).

Nat. Bank v. Ashwood Homes, Inc., 475 N.E.2d 1230, 1233 (1985).  To satisfy due process, state remedies need not provide the same relief as an action under Section 1983. Hudson v. Palmer, 468 U.S. at 535 ("[T]hat [the plaintiff] might not be able to recover under [state] remedies the full amount which he might receive in a § 1983 action is not, as we have said, determinative of the adequacy of state remedies.").  Therefore, the Plaintiff cannot demonstrate that there are no state remedies available.  See Huron Valley Hosp., Inc. v. City of Pontiac, 887 F.2d 710, 716 (6th Cir. 1989) (plaintiff's burden to demonstrate that there are no state remedies available).

Third, there is no evidence that Trasavage, Perry or DeAngelo played any role or had any responsibility for providing a hearing, or that they refused to provide a suitable post-deprivation remedy.  See Hudson v. Palmer, 468 U.S. at 533.  Indeed, it was the Cape & Islands District Attorney's Office that initially refused to permit the horse to be returned to the Plaintiff, on the grounds that the criminal complaint had not yet been resolved. Exhibit 18, pp. 2-3.

Fourth, the Plaintiff does not provide any evidence that he requested a hearing. Johnson v. Town of Weare, No. 12-CV-032-SM, 2012 WL 2450599, at *8 (D.N.H. June 4, 2012), report and recommendation approved, No. 12-CV-32-SM, 2012 WL 2428164 (D.N.H. June 27, 2012) (dismissal where complaint did not provide any information about what process plaintiff pursued, or whether such procedures were inadequate to allow him to retrieve his property).

Fifth, the horse is evidence related to a crime under M.G.L. c. 272 § 77 (cruelty to animals), the District Attorney was handling the matter, and the Plaintiff regained

possession of his property through the criminal proceeding.  Exhibit 17, p. 2; Exhibit 18, p. 1.

Sixth, under current law, the Plaintiff is not entitled to a hearing under M.G.L. c. 272 § 104 ("Security for seizure and impoundment of animals relating to cruelty to animals or animal fighting").  On April 13, 2017, the legislature amended the statute to no longer require a hearing.

In addition, the three-part balancing test under Mathews v. Eldridge, 424 U.S. 319 (1976) establishes that the Defendants did not violate due process.  First, while the Plaintiff's private property interest was affected, the animal was returned to him.  Second, the risk of an erroneous deprivation was low due to the participation of a trained animal-welfare officer, so there would be little value to additional procedural safeguards.  Third, due to the horse's living conditions, including dirty water, dirty food, and accumulation of feces, among other things, there was a great governmental interest in the immediate seizure of the horse without pausing for a hearing.  Mathews, 424 U.S. at 335.  Therefore, the seizure of the Plaintiff's horse did not violate the Fourteenth Amendment.

Based on the facts of this case, the officers are protected by qualified immunity, they did not violate any clearly established law, and the Plaintiff cannot meet his burden to identify a similar case that would put all reasonable officers on notice that their actions in this case would violate the Fourteenth Amendment.

As to the Town, the Plaintiff's § 1983 claim fails because there is no evidence of a Town policy of deliberate indifference to the constitutional rights of its citizens.[4]  Rather,

---

[4] As an initial matter, the Plaintiff's § 1983 claim against the Town fails because its officers did not violate any constitutional rights.  A municipality cannot be held liable under § 1983 absent an underlying constitutional violation by one of its officers.  Rivera v. City of Worcester, No. CIV.A. 12-40066-TSH, 2015 WL 685800, at *5 (D. Mass. Feb. 18, 2015).

the Plaintiff merely alleges that his horse was seized on time.  A plaintiff asserting

a Monell claim must show there was a municipal custom or policy of deliberate

indifference to the commission of constitutional violations by police officers; and this

custom or policy was the cause of, and moving force behind, the deprivation which he

suffered.  Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).  Under Monell, a

plaintiff may bring a § 1983 claim against a local government entity "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury [on the plaintiff]."

Monell v. Dept. of Social Servs. of N.Y., 436 U.S. 658, 694 (1978).  To establish such a

claim, the Plaintiff must demonstrate "a direct causal link between a municipal policy or

custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S.

378, 385 (1989).  The allegations must "allow for an inference that the [municipality]

encouraged, condoned or acquiesced in violations of citizens' constitutional rights."

Tambolleo v. Town of West Boylston, 613 N.E.2d 127, 130 (Mass. App. Ct. 1993).

Therefore, as a matter of law, the Plaintiff cannot succeed on his municipal claim of a

Fourteenth Amendment violation and summary judgment should enter for the Town of

Truro.

### D.  Count II - Violations of the Massachusetts Civil Rights Act Claim - Fails As A Matter Of Law

The Plaintiff's claim under the Massachusetts Civil Rights Act (MCRA) fails for

the same reasons as his claims under § 1983 – the statutes are coextensive.

See Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002), citing Duarte v. Healy, 405 Mass.

43, 537 N.E.2d 1230, 1232 (1989) ("The same qualified immunity standard that applies under § 1983 has also been held to apply to claims under the MCRA[.]").

Moreover, in this case, there are no facts to support an inference that any of the individual officers -- Trasavage, Perry or DeAngelo -- threatened, intimidated or coerced the Plaintiff which caused him to give up something that he had the right to do.  Indeed, he does not make any such allegations.  The MCRA contemplates a two-part sequence where liability may be found if (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that he has the constitutional right to do.  M.G.L. c. 12, §§ 11H, 11I; Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018).  Even a direct violation of a person's rights does that not by itself involve threats, intimidation, or coercion is not actionable. Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247–48 (D. Mass. 2010), citing Longval v. Comm'r of Corr., 404 Mass. 325, 333 (1989).  Rather, a defendant's actions must amount to "an attempt to force someone to do something the person is not lawfully required to do."  Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d at 247–48, citing Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565 (1995).  Accordingly, this claim fails as a matter of law.

### E.  Count III - Malicious Prosecution - Fails As A Matter Of Law

The Plaintiff's malicious prosecution claim fails because there was probable cause for the Plaintiff's criminal charge, the offices did not commence the criminal charges, and there is no evidence of actual malice by any of the officers.  In Massachusetts, to prevail on claim of malicious prosecution, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an

absence of probable cause for the charges; and (4) actual malice.  Nieves v.
McSweeney, 241 F.3d 46, 53 (1st Cir.2001), citing Correllas v. Viveiros, 410 Mass. 314,
572 N.E.2d 7 (1991).[5]

Here, based on the horse's living conditions, there was probable cause to charge the
Plaintiff with animal cruelty under M.G.L. c. 272 § 77 (person who unnecessarily fails to
provide animal with proper food, drink, shelter, sanitary environment, or protection for the
weather).  Among other things, the horse had inadequate and dirty food (Exhibit 4, p. 8),
dirty water (Exhibit 4, pp. 1-4), difficult access to water in over 80-degree heat (Exhibit 3,
p. 3, Exhibit 4, p. 3; Exhibit 5), inadequate shelter (Exhibits 4, pp. 5-6; Exhibit 6),
inadequate fencing (Exhibit 2, p. 2; Exhibit 3, p. 2; Exhibit 4, pp. 7, 12, 16; Exhibit 8), and
unsanitary buildup of feces (Exhibit 4, pp. 5, 7, 11, 12, 17, 18, 19, 22; Exhibit 8).  The
horse's hooves needed care as they were cracked and chipped.  Exhibit 2, p. 2; Exhibit 4,
pp. 11, 14, 24, 25; Exhibit 1, p. 174.  Critically, the officers also found severely neglected
and suffering Angora rabbits on the same property.  Exhibits 2, 3, 9.

As a result, the Plaintiff cannot meet his burden to provide evidence that the crime
charged lacked probable cause.  Cass v. Town of Wayland, 383 F. Supp. 3d 66 (D. Mass.
2019).  The absence of probable cause is "[a]n essential element" of
a malicious prosecution claim, and "[t]he burden of proof on this issue is placed firmly on
the plaintiff."  Id., citing Seelig v. Harvard Coop. Soc'y., 1 Mass.App.Ct. 341, 296 N.E.2d
825, 827–28 (1973).  Probable cause in the context of a malicious prosecution claim "has
long been defined as 'such a state of facts in the mind of the ... (defendant) as would lead a

---

[5] The Town of Truro is immune from this intentional tort claim pursuant to M.G.L. c. 258, § 10(c)
(preserving sovereign immunity for municipalities from "any claim arising out of an intentional
tort, including ... malicious prosecution ...").

man of ordinary caution and prudence to believe, or entertain an honest and strong

suspicion,' that the plaintiff had committed a crime." Carroll v. Gillespie, 14

Mass.App.Ct. 12, 436 N.E.2d 431, 435 (1982), quoting Lincoln v. Shea, 361 Mass. 1, 277

N.E.2d 699, 702 (1972).  It is an objective standard, and "defendant's conduct must be

adjudged by his honest and reasonable belief at the time he instituted the complaint rather

than by what may turn out later to have been the actual state of things." Lincoln, 277

N.E.2d at 702.

 Even assuming an absence of probable cause -- which there was not -- the Plaintiff's

claim for malicious prosecution fails.    As to Sgt. DeAngelo, she had no role in the process

of charging the Plaintiff.  Exhibit 3; Exhibit 11.  See Morrissey v. Town of Agawam, 883 F.

Supp. 2d 300, 312 (D. Mass. 2012) (malicious prosecution claim fails where officer had no

role in the process of charging the Plaintiff).    As to ACO Trasavage, there is no evidence

of any affirmative pressure by her to prosecute and her role was only to write the report.

See Morrissey, 883 F. Supp. 2d at 312 (malicious prosecution claim fails where there is no

evidence of affirmative pressure by officer, officer's role was limited to completing the

arrest report, arresting officer writes the charges which must be approved by a supervisor,

the supervisor brings the charges to the clerk magistrate to determine if there are sufficient

grounds in support, and, if the clerk magistrate determines that sufficient grounds do not

exist, no complaint is issued).  Det. Sgt. Perry was reasonable to submit ACO Trasavage's

report upon which the clerk-magistrate based the probable cause finding.

See Messerschmidt v. Millender, 565 U.S. 535, 546 (2012) ("[T]he fact that a neutral

magistrate has issued a warrant is the clearest indication that the officers acted in an

objectively reasonable manner, or, as we have sometimes put it, in objective good faith.").

There is no evidence that any of the individual officers acted with actual malice or some ulterior purpose.  "To raise a genuine issue of material fact on the question of malice, the plaintiff must come forward with some evidence that would permit a fact finder to conclude that [Perry] (1) knew there was no probable cause, and (2) acted with an improper motive."  Sklar v. Beth Isr. Deaconess Med. Ctr., 797 N.E.2d 381, 387 (2003); Beecy v. Pucciarelli, 387 Mass. 589, 441 N.E.2d 1035, 1039 (1982) (noting that even mere "wilful and wanton conduct does not constitute malicious conduct"); Sklar, 797 N.E.2d at 387 ("Wanton or negligent behavior is insufficient without some evidence of an ulterior purpose.").

Finally, the Plaintiff alleges that he was subsequently acquitted of the charge, however, a "conviction require[s] the higher standard of proof beyond a reasonable doubt," so a criminal acquittal does not "establish that [Perry] lacked the requisite probable cause" to apply for a criminal charge against the Plaintiff.  See Gillis v. Chase, 894 F.3d 1, 3 (1st Cir. 2018).  As a result, the Plaintiff's malicious prosecution claim fails as a matter of law.

### F.  Count VI [Sic] - Negligence - Fails Against The Individual Officers

The Plaintiff's negligence claim against the individual officers fails because negligence claims may only be brought against a public employer, not public employees. Salameh v. Duval, No. CIV.A. 12-10165-RGS, 2014 WL 691610, at *3 (D. Mass. Feb. 21, 2014).  The Massachusetts Tort Claims Act (MTCA) governs tort liability for "public employers" and protects public employees acting within the scope of their employment from liability caused by their negligence or wrongful acts.  M.G.L. c. 258 §§ 1-2; Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003).  In other words, the Plaintiff's negligence claims against Trasavage, Perry and DeAngelo are barred by the MTCA because the

remedies provided under the statute are the exclusive means to seek redress for negligence by public employees.  See Canales v. Gatzunis, 979 F.Supp.2d 164, 176 (D. Mass. 2013).

### G.  Count IX - Massachusetts Tort Claims Act - Fails Against The Town

The Plaintiff's negligence claim also fails against the Town because the Plaintiff only alleges intentional conduct by the officers.  Under the MTCA, "[p]ublic employers shall be liable for injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment."  M.G.L. c. 258, § 2.  In such instances, "liability for the negligent acts of a public employee committed within the scope of employment is visited upon the public employer, and not the employee."  Farrah ex rel. Estate of Santana v. Gondella, 725 F.Supp.2d 238, 246 n.9 (D. Mass. 2010).  However, § 2 does not apply to any claim arising out of an intentional tort, including assault, battery, malicious prosecution, false arrest, and intentional mental distress.  Id. § 10(c).

Here, the Plaintiff's negligence claims fail against the Town because the claims are based on allegations of intentional torts by police officers, and not negligent conduct.  This also makes the Plaintiff's presentment deficient under M.G.L. c. 258.  Moreover, "Massachusetts cases have only allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort, which was committed by named or unnamed public employees." Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir.2010).  In the present case, there is no evidence to support an inference that the Town knew or should have known that Trasavage, Perry or DeAngelo would commit any torts or other causes of action, or that

somehow their training or supervision was negligent.  Therefore, the Plaintiff's negligence claim should be dismissed against the Town.

## VI.    CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Honorable Court enter judgment in their favor under Fed. R. Civ. P. 56, as to all counts in the Plaintiff's Complaint.

Respectfully submitted,

The Defendants, Suzanne Trasavage, David F. Perry, Carrie Deangelo, and the Town of Truro,
By their attorneys,


/s/ Thomas R. Donohue
Leonard H. Kesten, BBO# 542042
Thomas R. Donohue, BBO# 643483
BRODY, HARDOON, PERKINS & KESTEN, LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

DATED:  July 31, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

/s/ Thomas R. Donohue
Thomas R. Donohue, BBO# 643483

DATED:  July 31, 2019