UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LUTHER A. BUMPS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:18-cv-11839-IT |
| | * | |
| SUZANNE TRASAVAGE, DAVID F. | * | |
| PERRY, CARRIE DEANGELO, and | * | |
| TOWN OF TRURO, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER
March 6, 2020

TALWANI, D.J.

Plaintiff Luther Bumps ("Bumps") brings suit against Animal Control Officer Suzanne Trasavage ("ACO Trasavage"), Detective Sergeant David Perry ("Det. Sgt. Perry"), and Sergeant Carrie DeAngelo ("Sgt. DeAngelo"), as well as their employer, the Town of Truro ("the Town"), for seizing his horse and charging him with animal cruelty. Bumps alleges violations of his 4th and 14th Amendment rights under 42 U.S.C. § 1983 (Count 1), and the Massachusetts Civil Rights Act (Count 2), malicious prosecution by the individual defendants (Count 3), negligence by the individual defendants (Count 4),[1] and liability as to the Town under the Massachusetts Tort Claims Act (Count 5).[2] Complaint [#1-1]. After the close of discovery, Defendants filed a Motion for Summary Judgment [#24] seeking summary judgment on all claims. Plaintiff opposes, except as to Count 4. Pl.'s Memo 17 [#28]. For the following reasons, Defendants' motion is GRANTED.

---

[1] Labeled "Count VI" in Plaintiff's Complaint [#1-1].
[2] Labeled "Count IX" in Plaintiff's Complaint [#1-1].

I.    Factual Background

The following facts are drawn from Plaintiff's Response to Defendants' Concise
Statement of Facts and Statement of Additional Material Facts ("Pl.'s SOF") [#29] and the
parties' supporting documentation, viewing the evidence in the light most favorable to the non-
moving party.

Bumps and his mother reside in Truro, Massachusetts, on a property that he uses as a
commercial scrap metal yard. Pl.'s SOF ¶ 1-2 [#29]. Bumps keeps a horse on the property in a
paddock area bounded by an electric fence. Id. ¶¶ 7-8. The paddock area is "one-half an acre or
more" and includes a hill with a flat 100 foot by 20 foot area on top. Id. ¶ 8. The hill slopes down
towards a pond. Id.

Plaintiff typically removed manure from the paddock every week or two. Id. ¶ 9.
However, in August 2015, he had not removed any manure for five or six weeks. Id. ¶¶ 15-16.
The manure was building up faster than usual because Bumps had for some time been keeping a
second horse in the paddock. Id. ¶ 18.

The second horse left Plaintiff's property in early August 2015. Id. ¶ 19. Later that
month, Bumps tore down his horse's three-sided shelter, and began to build a new shelter. Id.
¶¶ 23-24.

On August 20, 2015, Massachusetts Society for the Protection of Animals ("MSPCA")
Officer Weiand visited Plaintiff's property. Id. ¶ 116. Bumps was not home at the time. Id. ¶ 48.
Officer Weiand found eight rabbits in the basement that Plaintiff was keeping for someone else,
id. ¶¶ 27, 32, and observed Plaintiff's horse and the paddock. Id. ¶ 116. At that time, Plaintiff's
horse had cracks in her hooves. Id. ¶ 37. The horse's water tub contained water that appeared

brown, id. ¶ 45, and manure had not been removed from the paddock for five or six weeks. Id. ¶ 39.

After this visit, Officer Weiand spoke by phone with Plaintiff. Id. ¶ 48. She expressed concern about the existence of wood debris in the horse's water tub and the accumulation of manure in the pasture area. Id. ¶¶ 10, 48, 117. She told Plaintiff that the water and manure needed to be cleaned up. Id. ¶¶ 12-13.

Officer Weiand visited Plaintiff's property again that month. Id. ¶ 54. On August 31, 2015, ACO Trasavage and Truro Police Department Officer Thomas Roda inspected Plaintiff's property, including the paddock area, and the rabbits. Id. ¶¶ 56-57, 62. The water in the horse's tub still appeared brown. Id. ¶ 58. For shelter, there was a partially constructed three-sided structure without a roof. Id. ¶¶ 23-24, 61.

On September 2, 2015, ACO Trasavage and Det. Sgt. Perry visited Plaintiff's property to check on the condition of the animals. Id. ¶ 76. Plaintiff's mother gave the officers permission to view the rabbits, and on the way to the basement, they were "greeted" by the horse located in the paddock area. Id. ¶ 77. The built-up manure had not yet been removed, see id. ¶¶ 92, 102, the shelter Plaintiff was building still had no roof, id. ¶ 24, and the paddock's fence was in need of repair. Id. ¶ 102.[3] There were branches near the horse's water tub, but Plaintiff had cleared one side so that the horse had access to water. Id. ¶ 25.

After determining that the rabbits needed medical attention, ACO Trasavage and Det. Sgt. Perry left the property and contacted Truro Health Agent Patricia Pajaron, and Erin Potter, a certified responder with the ASPCA. Id. ¶ 82-83. The four of them, along with Sgt. DeAngelo,

---

[3] Plaintiff disputes Pl.'s SOF ¶ 60 which states that on August 31, 2015, "It appeared that the electric fence was not working and in disrepair, with multiple gaps." However, he concedes that he repaired the fence after the seizure of his horse. Pl.'s SOF ¶ 102.

returned to Plaintiffs property around 1:00 p.m. that same day. Id. ¶ 84. After removing the

rabbits, they decided to remove the horse as well and ordered a trailer for that purpose. ACO

Trasavage's Report 3 [#26-3]; see also Pl.'s SOF ¶ 88. The officers removed the horse from the

property. Pl.'s SOF ¶ 88 [#29]. The horse was in good health and neither ill nor injured at the

time she was seized. Id. ¶ 121.[4] Defendants did not have, and had not sought, a warrant for the

seizure. Id. ¶ 121.[5] No show cause hearing was ever held concerning the retention of Plaintiff's

horse. Id. ¶ 125.

ACO Trasavage drafted a report on the events, stating that "it was . . . determined that the

horse was living in improper and inadequate conditions." ACO Trasavage's Report 3 [#26-3]. In

a discussion that same day during which there was "disagreement on a number of points," Sgt.

Perry told Plaintiff that if he "pushed back on this," he would charge Plaintiff with animal

cruelty. Pl.'s SOF ¶ 122.

On September 3, 2015, Plaintiff spoke with Officer Weiand who told him that, if she had

seen anything that justified seizing the horse during her earlier inspections, she would have done

so. Id. ¶ 123.

On September 4, 2015, the Health Department issued an Order to Correct in which

Health Agent Patricia Pajaron informed Bumps that on September 2, 2015, she had observed an

accumulation of horse manure in the paddock that gave off an unpleasant odor. Id. ¶¶ 91-93. The

Order indicated that the Truro Health Department had determined the state of Plaintiff's property

to be a Public Health Nuisance and that Plaintiff needed to remove all manure from the paddock

within seven days.[6] Id. ¶¶ 95, 97.

---

[4] There are two paragraphs numbered 121. This is stated in the first.
[5] There are two paragraphs numbered 121. This is stated in the second.
[6] The Order also required Plaintiff to remove all miscellaneous metal, wood, and plastic

On September 23, 2015, ACO Trasavage asked Plaintiff if he would relinquish his horse. Id. ¶ 124. When he declined, she told him that boarding the horse cost "some outrageous amount of money per day." Id. ¶ 124.

On October 7, 2015, Det. Sgt. Perry filed an application for a Criminal Complaint against Plaintiff for one count of animal cruelty. Id. ¶ 99; Application for Criminal Complaint 2 [#26-11]. ACO Trasavage's report served as the basis of the application for the complaint. Def.'s Memo 3, 18 [#25]; Pl.'s Memo 16 [#28]. The following day, the clerk magistrate in the Orleans District Court found probable cause for the charge based on the facts set forth in the submitted report. Pl.'s SOF ¶ 100 [#29]; Application for Criminal Complaint 2 [#26-11]. The complaint that issued alleged that Plaintiff:

> On 09/02/15 did overdrive, overload, drive when overloaded, overwork, torture, torment, deprive of necessary sustenance, cruelly beat, mutilate or kill an animal, or did cause or procure such, or did use in a cruel or inhuman manner in a race, game or contest, or in training therefor, as lure or bait a live animal other than an animal used as lure or bait in fishing, in violation of G.L. c.272, §77.

Criminal Complaint 3 [#26-11].

Bumps subsequently cleaned up the debris on his property, obtained a building permit, completed construction of a roofed shelter for the horse, and mended the paddock's fence. Pl.'s SOF ¶ 102. On January 4, 2016, he notified the Board of Health that his property was ready for inspection, id. ¶ 103, and on January 11, 2016, the Truro Health Department notified Plaintiff that the Order to Correct had been resolved. Id. ¶ 105.

On February 24, 2016, the Cape & Islands District Attorney's Office refused to return Plaintiff's horse on the ground that the criminal complaint had not yet been resolved. Id. ¶ 107. On March 17, 2016, Plaintiff filed a "Motion for Return of Unlawfully Seized Horse" in the

---

materials from the property within 30 days and stated that that request had been previously made in June 2015.

Orleans District Court. Id. ¶ 108. On March 25, 2016, the Orleans District Court found

"sufficient evidence presented to Magistrate to warrant issuance of complaint." Id. ¶ 111. The

Court did not act on the motion for return of the horse. Id. ¶ 108.

On March 29, 2016, with the District Attorney's consent, the horse was returned to

Bumps. Id. ¶ 109; Pl.'s Answers to Interrogatories 2 [#29-2].

Following a one day bench trial on August 2, 2016, Plaintiff was acquitted of the charge of

animal cruelty. Id. ¶ 112-13; Criminal Docket No. 1526CR001455 [#26-17].

II.     Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When

considering a summary judgment motion, the court views the evidence in the light most

favorable to the non-moving party and resolves any disputes of material fact in their favor.  See

Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). A "genuine dispute" is one that, based on

the evidence submitted at this stage of litigation, "a reasonable jury could resolve ... in favor of

the non-moving party," and a "material fact" is one that has "the potential to affect the outcome

of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)

(citations and quotation marks omitted). If further inquiry into the facts is necessary to apply the

relevant law, summary judgment is not appropriate. Mandel v. Bos. Phoenix, Inc., 456 F.3d 198,

205 (1st Cir. 2006).

The moving party is responsible for identifying those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the

burden shifts to the non-moving party to set forth "specific facts showing there is a genuine issue

for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

III.   Analysis

    A.   Consideration of Supporting Materials

    As a threshold matter, Plaintiff objects to the court relying on "unsworn" reports,

"unauthenticated" photographs, and "otherwise inadmissible evidence" submitted by Defendants

to support their Statement of Undisputed Material Facts in Support of their Motion for Summary

Judgement [#26]. Pl.'s Memo 7 [#28]. Defendants cite to ASPCA Officer Weiand's

Investigation Report [#26-2] and ACO Trasavage's Incident Report [#26-3] as well as numerous

unlabeled photographs [#26-4, 5, 6, 8, 9], and two photographs that indicate an address and date

[#26-7].

    Supporting material need not be submitted at the summary judgment stage in a form

admissible in evidence but does need to be susceptible to being presented in such a form. See

Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited…cannot be presented in a

form that would be admissible in evidence"). ASPCA Officer Weiand's Investigation Report

[#26-2] and ACO Trasavage's Incident Report [#26-3] are in a form that would be admissible in

evidence as public records under Fed. R. Evid. 803(8)[7] and so are properly within the

consideration of the court. Defendants' photographs [#26-4-9], however, are presented without

any accompanying information that would allow the court to understand how a foundation might

be laid at trial and, so, are excluded from the summary judgment record.

---

[7] At the February 12, 2020, hearing, Plaintiff conceded in open court that he does not dispute that
the versions of these reports filed with the court are true and correct copies.

    B.     Count 1: 42 U.S.C. § 1983

       1.     Fourth Amendment Search and Seizure

Defendants argue that summary judgment should enter in their favor as to Plaintiff's 4th

Amendment claims brought under 42 U.S.C. § 1983 because Defendants ACO Trasavage, Det.

Sgt. Perry, and Sgt. DeAngelo did not commit any constitutional violations or, to the extent they

did, the individual Defendants are protected by qualified immunity, and there is no evidence of a

Town policy of deliberate indifference to the 4th Amendment rights of its citizens. Def.'s Memo

1, 14 [#25].

    First, Defendants contend that the warrantless seizure of Plaintiff's horse was justified by

exigent circumstances. Def.'s Memo 6 [#25].

    Other courts have found that the warrantless search for or seizure of animals can be

justified under the emergency aid exception. See e.g. Commonwealth v. Duncan, 467 Mass. 746,

753 (2014) (warrantless search of a home falls under the emergency aid exception where officers

"have an objectively reasonable basis to believe" that an animal inside is injured or in imminent

danger of physical harm); United Pet Supply, Inc. v. City of Chattanooga, 768 F.3d 464, 490 (6th

Cir. 2014) (warrantless seizure of animals is justified where there is "imminent and ongoing

danger to the health of the animals"). Here, even if Defendants have shown that the horse's

conditions were inadequate,[8] Defendants have not shown on summary judgment an objectively

reasonable basis to believe that the horse was in an imminent danger of physical harm such that

no warrant was required. The officers' actions in visiting the property and viewing the horse on

---

[8] It is undisputed that, during the month of August 2015, at least as of Officer Weiand's first visit
to Plaintiff's property, there was a buildup of manure in the paddock, Pl.'s SOF ¶ 39, the horse's
water appeared brown, Pl.'s SOF ¶ 45, the horse's shelter consisted of a partially constructed
three-sided structure without a roof, Pl.'s SOF ¶ 23-4, 61, and the horse had cracks in her hooves.
Pl.'s SOF ¶ 37.

August 20, 26, and 31, 2015, before seizing it on September 2, 2015, underscore the time available to obtain a warrant, and the summary judgment record shows no meaningful deterioration in paddock conditions or the wellbeing of the horse over the course of those visits. Moreover, on the day of the seizure, officers visited the property twice before seizing the horse. Pl's SOF ¶ 76, 84 [#29]. The officers' actions belie exigent circumstances as to the horse.

Next, Defendants contend that the Plain View doctrine justifies the warrantless seizure. ¶ Def.'s Memo 9 [#25]. It is undisputed that the officers lawfully reached the vantage point from which they viewed the horse. See U.S. v. Jones, 187 F.3d 210, 219-20 (1st Cir. 1999). There was, moreover, probable cause that horse may have been useful evidence of the crime of animal cruelty as defined at M.G.L. c. 272, § 77.[9] See id. Whether the officers had a lawful right of access to the horse itself, see id., which was inside a fenced paddock adjacent to Plaintiff's home, is a closer question.

Here, Defendants argue that they had a lawful right of access to the horse because it was not located within either the house or its curtilage. Def.'s Memo 10 [#25]; see Oliver v. U.S., 466 U.S. 170 (1984) (finding no 4th Amendment protections for a field "over a mile from petitioner's home" despite locked gate and "No Trespassing" signs); U.S. v. Dunn, 480 U.S. 294 (1987) (officers permitted to enter "open field" without a warrant or permission). Plaintiff contends that the officers needed, but were not given, permission to enter the fenced paddock. Pl.'s Memo 11

---

[9] On September 2, 2015, there was a buildup of manure in the paddock, Pl.'s SOF ¶ 39, 92, 102, the horse's shelter consisted of a partially constructed three-sided structure without a roof, id. ¶ 23-24, 61, and the paddock's fence was in need of repair. Id. ¶ 102. It is a crime in Massachusetts for a person who "having the charge or custody of an animal…unnecessarily fails to provide it with proper food, drink, shelter, sanitary environment, or protection from the weather." M.G.L. c. 272, § 77.

[#28]; see also Florida v. Jardines, 569 U.S. 1, 6 (2013) (contemplating a "side garden" as within a home's constitutionally protected curtilage).

The court need not resolve this issue. Officials only lose the protection of qualified immunity where they both violated the plaintiff's constitutional rights and the abridged right was "clearly established" at the time of the violation. Gray v. Cummings, 917 F.3d 1, 10 (1st Cir. 2019).[10] For a right to be clearly established, there must be controlling authority or a consensus of persuasive authority "sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm" such that "an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." Id. (quoting Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (internal quotations omitted)).

It is sufficient to find that, due to an absence of clear and direct authority, an objectively reasonable official would not have known whether entering the paddock violated the rule of law. See Gray v. Cummings, 917 F.3d 1, 10 (1st Cir. 2019). Existing precedent does not here "place the lawfulness of the particular [action] beyond debate." City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 504 (2019) (quoting District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018)). As such, to the extent their warrantless seizure of Plaintiff's horse was not justified by the Plain View exception to the 4th Amendment, Defendants ACO Trasavage, Det. Sgt. Perry, and Sgt. DeAngelo are protected by qualified immunity.

As to the Town, even assuming that the officers' warrantless seizure was not justified by the Plain View doctrine, there is no evidence that a Town policy or custom is responsible for the constitutional violation. See Monell v. Dept. of Social Servs. Of N.Y., 436 U.S. 658, 694 (1978).

---

[10] Courts have discretion as to which prong to address first. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

Plaintiff argues that the Town's failure to provide a show cause hearing for its retention of the horse is an act of official government policy ratifying the allegedly unconstitutional seizure. Pl.'s Memo 13 [#28]. Even if that were the case, such ratification after the fact could not establish a "direct causal link" to the already completed seizure. See City of Canton v. Harris, 489 U.S. 378, 385 (1989). As such, Defendants' motion for summary judgment as to the alleged violation of Plaintiff's 4th Amendment rights, brought under 42 U.S.C. § 1983, is GRANTED.

2.        14th Amendment Due Process

Defendants argue that summary judgment should enter in their favor as to Plaintiff's 14th Amendment due process claims brought under 42 U.S.C. § 1983 because, among other reasons, Defendants ACO Trasavage, Det. Sgt. Perry, and Sgt. DeAngelo are protected by qualified immunity as to pre-deprivation process, there is no evidence of a Town policy of deliberate indifference to the pre-deprivation due process rights of its citizens, and Plaintiff had adequate post-deprivation state law remedies. Def.'s Memo 12-14 [#25].

The pre-deprivation process analysis here is guided by the 4th Amendment, which provides that, in the criminal investigatory context, the process due is the procurement of a warrant, unless warrantless seizure is justified by an exception. See Albright v. Oliver, 510 U.S. 266, 273-4 (1994) (holding that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"); see also Sanders v. City of San Diego, 93 F.3d 1423, 1427 (9th Cir. 1996) ("compliance with the Fourth Amendment when seizing the property for investigatory purposes satisfied pre-deprivation procedural due process"). As discussed, to the extent the warrantless seizure of the horse was not justified by an exception to the 4th Amendment, the

individual Defendants are protected by qualified immunity and no showing has been made that a Town policy or custom is responsible for the allegedly unlawful seizure. Defendants' motion for summary judgement as to Plaintiff's 14th Amendment pre-deprivation due process claim is GRANTED.

As to post-deprivation due process, there is no evidence in the record that Defendants ACO Trasavage, Det. Sgt. Perry, and Sgt. DeAngelo were responsible for providing (or denying) post-deprivation process to Plaintiff. As such, with respect to the individual officers, Defendants' motion for summary judgement on Plaintiff's 14th Amendment post-deprivation procedural due process claim is GRANTED.

Defendant Town argues that summary judgment should similarly enter in its favor because, among other reasons, the criminal court process provided sufficient post-deprivation process. Def.'s Memo 12 [#25]. Due process requires "some form of hearing…before an individual is finally deprived of a property interest." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation omitted). When property is seized as part of a criminal investigation and criminal charges are filed, as is the case here, post-deprivation procedural due process for the return of the property is available through the criminal court. See generally Mass. R. Crim. P. 13 (governing "Pretrial Motions" generally); see also Mass. R. Super. Ct. 61 (governing "Motions for Return of Property and to Suppress Evidence"). Indeed, Plaintiff filed a motion for the return of his horse with the Orleans District Court on March 17, 2016. Pl.'s SOF ¶ 108 [#29]. The District Attorney ultimately agreed to the horse's return, id. ¶ 109, and Plaintiff regained possession on March 29, 2016. Pl.'s Answers to Interrogatories 2 [#29-2]. Plaintiff asserts that the District Court did not hear his motion, but he does not say that it would not have done so had the horse not been returned shortly after its filing. Pl.'s SOF ¶ 108 [#29]. Moreover, any failure

by the District Court or the District Attorney to provide proper process is not a failure by the Town.

While it is true that during the weeks that passed between the seizure of Plaintiff's horse on September 2, 2015 and the filing of a criminal charge on October 8, 2015, there was no extant criminal process through which Plaintiff could seek return of his property,[11] it is also the case that, during that period, the deprivation was not final. Indeed, on September 23, 2015, ACO Trasavage specifically asked Plaintiff if he would relinquish his horse and he declined to do so. Id. ¶ 124. Plaintiff had access to process through the criminal proceedings prior to being finally deprived of his property. As such, Defendant Town's motion for summary judgement on Plaintiff's 14th Amendment post-deprivation procedural due process claim is GRANTED.

C.      Count 2: Violations of the Massachusetts Civil Rights Act

Defendants argue that summary judgment should enter in their favor as to Plaintiffs' claims under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, for the same reasons as it should enter in their favor as to his claims under 42 U.S.C. § 1983 and, in addition, because no facts support an inference of individual Defendants threatening, intimidating, or coercing Plaintiff such that they caused him to give up a right secured by the constitutions of the United States or the Commonwealth. Def.'s Memo 15 [#25]. The MCRA is coextensive with 42 U.S.C. § 1983 except that the MCRA does not require any state action and does require a violation by threats, intimidation, or coercion. See Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002) (citing Duca v. Martins, 941 F.Supp. 1281, 1294 (D. Mass. 1996); Duarte v. Healy, 537

---

[11] The statutory show cause hearing, though ultimately never held, was not purported to be available until after the application for a criminal complaint. See M.G.L. c. 272, § 104.

N.E.2d 1230, 1232 (Mass. 1989)). For the reasons articulated as to Count 1, Defendants' motion for summary judgement on Count 2 is GRANTED.

      D.      <u>Count 3: Malicious Prosecution</u>

Defendants argue that the court should enter summary judgment in their favor as to Plaintiff's allegations of malicious prosecution[12] against individual Defendants because there was probable cause for the crime charged and because there was no actual malice on the part of any individual Defendant. Def.'s Memo 16 [#25]. As an initial matter, Plaintiff concedes that Defendant Sgt. DeAngelo had no role in the charging process. Pl.'s Memo at 14-17 [#28]. The court agrees and GRANTS summary judgment in her favor.

In order to make out a claim for malicious prosecution, a plaintiff must show the institution of criminal process with malice and without probable cause, and the termination of the criminal proceeding in favor of the plaintiff. <u>Gutierrez v. Mass. Bay Transp. Auth.</u>, 437 Mass. 396, 405 (2002). Ultimate acquittal does not establish a lack of probable cause to charge. <u>See Gillis v. Chase</u>, 894 F.3d 1, 3 (1st Cir. 2018). The <u>Application for Criminal Complaint</u> 2 [#26-11], is supported by <u>ACO Trasavage's Report</u> [#26-3]. That <u>Report</u> references the crime of animal cruelty and cites to M.G.L. c. 272, § 77, which criminalizes, among other acts, failure to provide an animal with "proper food, drink, shelter, sanitary environment, or protection from the weather." It is undisputed that, during the month of August 2015 and in early September 2015, there was a buildup of manure in Plaintiff's horse paddock, Pl.'s SOF ¶ 39, the paddock's fence needed mending, <u>id.</u> ¶ 102, the horse's water appeared brown, <u>id.</u> ¶ 45, and the horse's shelter

---

[12] Plaintiff does not specify whether he brings this claim under federal or state law. The court infers that it is brought under state common law because Plaintiff separates it from his claims under 42 U.S.C. § 1983 (Count 1). <u>See Smith v. Mass. Dep't of Corr'n</u>, 936 F.2d 1390, 1402 (1st Cir. 1991) (looking at plaintiff's word choice and intent to determine whether a claim for malicious prosecution was brought under Section 1983 or under state common law).

consisted of a partially constructed three-sided structure without a roof. Id. ¶ 23-4, 61. This is

sufficient to establish probable cause to charge Plaintiff, broadly, with animal cruelty under

M.G.L. c. 272, § 77. Because ACO Trasavage's role in the institution of criminal process was to

draft the Report [#26-1] referenced in the Application for Criminal Complaint, 2 [#26-11], and

both her report and that application contemplate animal cruelty charges brought under the full

statute, for which there was probable cause, she cannot be said to have instituted a malicious

prosecution of Plaintiff. The court GRANTS summary judgment in her favor.

      The analysis would be identical as to Det. Sgt. Perry's culpability if the Complaint quoted

the portion of the animal cruelty statute that references the failure to provide an animal with

"proper food, drink, shelter, sanitary environment, or protection from the weather" because,

regardless of motive, there would have been probable cause to charge Plaintiff with that crime.[13]

However, the Application for Criminal Complaint, 2 [#26-11], signed by Det. Sgt. Perry charged

only the first 80 words of the statute and not the later clause, thus alleging that Plaintiff:

> On 09/02/2015 did overdrive, overload, drive when overloaded, overwork, torture,
> torment, deprive of necessary sustenance, cruelly beat, mutilate, or kill an animal, or did
> cause or procure such, or did use in a cruel or inhuman manner in a race, game or contest,
> or in training therefor, as lure or bait a live animal other than an animal used as lure or
> bait in fishing, in violation of G.L. c. 272 § 77.

3 [#26-11].

      A complaint must contain "a plain, concise description of the act which constitutes the

crime or an appropriate legal term descriptive thereof," Mass. R. Crim. P. 4(a). There was no

probable cause to charge Plaintiff with the specific offenses enumerated in the Complaint as it

issued.

---

[13] Plaintiff argues that there was actual malice on the part of Det. Sgt. Perry based on the facts
that six weeks passed between the date the horse was seized and the date of application for
criminal complaint and that Perry told Plaintiff, in a discussion on the day of the seizure, that if
he "pushed back on this" Perry would charge him with animal cruelty. Pl.'s Memo 16-17 [#28].

In light of the application's quotation of an inapplicable portion of the statute, the court turns to the question of malice. To show malice, Plaintiff must demonstrate that the accuser both knew there was no probable cause for the commencement of the action and acted with an improper motive. <u>Beecy v. Pucciarelli</u>, 3387 Mass. 589, 593 (1982). Here, there is no reasonable inference of improper motive. The quotation of the beginning of the statute and not its entirety does not change the relevant statutory penalty were Plaintiff to have been convicted. <u>See</u> M.G.L. c. 272, § 77. In fact, where probable cause existed to charge Plaintiff with some enumerated forms of animal cruelty, charging him with only the more egregious acts made it less likely that he would ultimately be convicted. Because Plaintiff is unable to show facts from which a jury could reasonably infer actual malice, the court GRANTS summary judgment in Defendant Perry's favor as to Plaintiff's claim of malicious prosecution.

E.     <u>Count 4: Negligence</u>

Plaintiff concedes that a claim of negligence against officers acting within the scope of their employment is barred by the immunity provision of the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 2, and asks that Count 4 be dismissed. Pl.'s Memo 17 [#28]. The court GRANTS summary judgment in favor of Defendants on Count 4.

F.     <u>Count 5: Massachusetts Torts Claims Act</u>

Defendant Town argues that summary judgment should enter in its favor because Plaintiff's claims arise out of allegations of intentional torts committed by the officers such that the claims are explicitly excluded from the Massachusetts Torts Claims Act under M.G.L. c. 258, §10(c) and that, to the extent Plaintiff's claims arise out of allegations of negligence, the claims must fail because there is no evidence to support an inference that the Town knew or should have known that the individual Defendants would act negligently or that their training or supervision

was negligent as is required to support a claim of "supervisory negligence." Def.'s Memo 20

[#25] (citing Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010)).

Plaintiff, however, does not allege intentional torts or supervisory negligence but rather

that the Town is vicariously liable for the individual Defendants' actions, which he alleges were

negligent in the alternative. Officers have a duty to act with reasonable care in executing their

official responsibilities. See Isom v. Town of Warren, Rhode Island, 360 F.3d 7, 12-3 (1st Cir.

2004). This court has already found that, to the extent the warrantless seizure of Plaintiff's horse

was not justified by the Plain View exception to the 4th Amendment's warrant requirement, the

individual Defendants are protected by qualified immunity because an objectively reasonable

officer in the Defendants' positions would not have known that his or her conduct violated the

rule of law. See Gray v. Cummings, 917 F.3d 1, 10 (1st Cir. 2019). It is similarly true that

individual Defendants did not breach their duties of reasonable care in seizing Plaintiff's horse

where they lawfully viewed the animal, see U.S. v. Jones, 187 F.3d 210, 219-20 (1st Cir. 1999),

there was probable cause to believe it was evidence of the crime of animal cruelty, see id., and

they reasonably believed they had lawful access to the paddock. See id.; see also Oliver v. U.S.,

466 U.S. 170 (1984). The Town, thus, bears no vicarious liability for their actions.

Plaintiff further alleges without argument or explanation that the Town is directly liable

for its "ratification" of the conduct of the individual officers. As Defendants highlight, liability

for intentional torts is explicitly excluded from the Massachusetts Torts Claims Act under §10(c).

Looking elsewhere to understand Plaintiff's allegations, the court finds that Plaintiff argues as

part of his claim brought under 42 U.S.C. §1983 that the Town's failure to provide a hearing

pursuant to M.G.L. c. 272, § 104 is "an act of official government policy" that indicates that the

Town "ratified" the allegedly unconstitutional seizure of his horse. Pl.'s Memo 13 [#28]. This is

an allegation of intentional, not negligent, conduct and cannot properly be brought under the MTCA. Plaintiff next alleges that the Town was negligent in demanding compensation as a condition of returning the horse. Plaintiff, in his deposition, admits that any "demand" by the Town for compensation for the care of the horse was made through the District Attorney's office, possibly as part of plea discussions. Bumps Dep. 3-7 [#31-1]. This does not constitute the breach of a duty of care, to the extent one might exist in this context, on the part of the Town. Finally, Plaintiff alleges negligent failure on the part of the Town to provide the statutory show cause hearing regarding retention of the horse pursuant to M.G.L. c. 272, § 104. Plaintiff has not provided a basis for his assertion that it was the Town's duty to initiate such a hearing, which was to occur after the institution of charges, and so the court finds no negligence. Cf., Pina v. Massachusetts Society for the Prevention of Cruelty to Animals, 446 Mass. 1017, 1018 n.1 (2006) (noting that "a show cause hearing was held in the District Court pursuant to M.G.L. c. 272, § 104").

For these reasons, summary judgement is GRANTED in favor of Defendant Town as to Count 5.

IV.    Conclusion

Accordingly, for the reasons discussed in Part IV, Defendants' Motion for Summary Judgment [#24] is GRANTED.


IT IS SO ORDERED.

Date:   March 6, 2020                                      /s/ Indira Talwani
                                                          United States District Judge